IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**STEVEN AYHAN,**　　　　　　　　　　　　　　　　　Civil No. 09-00095-KI

　　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　**OPINION AND ORDER**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

　　　　　　Defendant.

DAVID B. LOWRY
9900 S.W. Greenburg Road
Portland, OR 97223

　　　Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney

1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

NANCY A. MISHALANIE
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, District Judge:

Plaintiff Steven Ayhan ("Ayhan") seeks judicial review of the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383©). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1969 (Tr. 72),[1] Ayhan reports a seventh-grade education (Tr. 85) and past work as a nursery worker and painter. Tr. 78. Ayhan alleges disability since June 1, 2003. Tr. 72. The Commissioner denied Ayhan's application initially and upon reconsideration. Tr. 48-51, 56-59.

An Administrative Law Judge ("ALJ") held a hearing on April 9, 2008. Tr. 490-32. On July 16, 2008, the ALJ found Ayhan not disabled. Tr. 12-18. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 2. Ayhan presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on June 12, 2009 (Docket # 14).

in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 416.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at

142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.920(g); 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Ayhan had performed no substantial gainful activity since his alleged onset date. Tr. 14. At step two, the ALJ found that, "giving the claimant every benefit of the doubt, he has the severe impairment of gastroesophegeal reflux disease ("GERD") secondary to hiatal hernia." *Id.* The ALJ found that this impairment did not meet or equal a listed disorder at step three (Tr. 15), and found that Ayhan retained the RFC to perform the full range of light work. Tr. 16. The ALJ subsequently found that Ayhan could not perform his past relevant work as a painter, but could perform work in the national economy at step five. Tr. 17. The ALJ therefore found Ayhan not disabled at any time through the date of his decision. Tr. 18.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a

preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## ANALYSIS

Ayhan challenges the ALJ's credibility determination, asserts that the ALJ should have developed the record, and asserts that the ALJ made erroneous step five findings.

### I. Credibility

Ayhan contends that the ALJ erroneously applied SSR 96-7p in finding him not entirely credible. Pl.'s Opening Br., 16. The ALJ found Ayhan not credible based upon his inconsistent statements, the medical record and observations of treating physicians, and Ayhan's failure to pursue recommended treatment, and his work history.

#### A. Standards: Credibility

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide

"clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; *see* also SSR 96-7p at *3 (available at 1996 WL 374186). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284. Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

    **B.**    **Analysis: Credibility**

        **a.**    **Inconsistent Statements**

The ALJ's credibility determination may cite the consistency, or inconsistency, of a claimant's statements. *Smolen*, 80 F.3d at 1284; SSR 96-7p at *5. The ALJ specifically discussed Ayhan's inconsistent statements regarding his Vicodin use. Tr. 16. Here the ALJ noted that Ayhan first testified that he takes vicodin every four to six hours for his allegedly constant pain, but that Ayhan also stated that he only takes it "if he is going to drive somewhere." *Id.* The ALJ also noted Ayhan's claim that the drug is effective for a half hour, but that he still maintained that his pain

always averaged "ten" on zero-to-ten pain scale.

The record shows that Ayhan testified that his pain averages a "ten" every day. Tr. 506-07. Ayhan also testified that he does not take pain medicine daily, only takes it if he needs to drive, and that it only works for thirty to forty-five minutes. Tr. 507. The record thus supports the ALJ's findings. The ALJ properly cited Ayhan's contradictory testimony and this finding should be affirmed.

    **b.  Medical Record**

The ALJ also noted that Ayhan's medical record showed no significant changes in his condition between September 2004 and November 2006, that his labs and imaging reports were within normal limits, and that Ayhan's treating physician did not endorse his request for disability. Tr. 14. The ALJ may consider a claimant's medical record in conjunction with other credibility factors. *Smolen*, 80 F.3d at 1284.

The record supports the ALJ's finding that Ayhan received an unchanging diagnosis of GERD between September 2004 and November 2006. Tr. 187-90, 195-96, 208-10, 288-98, 371-76, 393-95, 403-06. The labs and imaging reports cited by the ALJ also show normal results. Tr. 262-63. As the ALJ noted, treating physician Dr. Davis declined to render an opinion regarding Ayhan's alleged disability. Tr. 148. Finally, the ALJ correctly noted that treating physician Dr. Epstein found Ayhan's appetite and weight stable despite Ayhan's claims of severe and disabling GERD symptoms. Tr. 161.

The ALJ's citation to the medical record accurately reflects the record, and is therefore affirmed in conjunction with his other credibility findings.

    c.  **Non-Compliance With Treatment**

  The ALJ also noted that Ayhan was specifically instructed by emergency room physicians Drs. Shaw and Cloutier to take all medications as prescribed, but that Ayhan stated that these medications "do not work for him and he does not want to take them." Tr. 15. This finding is based upon the record. Tr. 150.

  A claimant may be found not credible for failing to follow prescribed treatment, absent a compelling reason for not following that treatment. *Smolen*, 80 F.3d at 1284. Examples of such reasons include extraordinary side effects of treatment, including loss of vision or risks associated with organ transplant. 20 C.F.R. § 416.930. Additionally, a claimant may not be penalized for failing to seek treatment when he cannot afford treatment. *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995). Ayhan presently asserts no such reasons for failing to take his medications as prescribed and the ALJ's finding is therefore affirmed.

    d.  **Work History**

  Ayhan asserts that the ALJ should have considered his "return to work attempts." Pl.'s Opening Br., 17. Ayhan cites a thirty-five page portion of the record in support of his submission that he made attempts to work. *Id.* (citing Tr. 303-44). The first twenty-five pages of this submission do not address any work-related matters. Tr. 303-28. Ayhan points to a form he submitted to his attorney which stated that he stopped working in August 2003 for "two reasons": first, because of his chest pain, and second, because he moved to another state. Tr. 329. Ayhan also wrote that he quit work three times because of chest pain, but has not applied for work since applying for disability benefits. Tr. 331.

The unsuccessful work attempt concept is an equitable device allowing the Commissioner to disregard a claimant's attempt to work in finding a claimant not disabled. SSR 05-02 at *1 (available at 2005 WL 437631). Regarding credibility, the ALJ may consider a claimant's work history; a positive work history generally supports a finding that the claimant is credible. A negative work history supports the inverse inference. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ therefore appropriately found that Ayhan's poor work history supported a finding that he was not credible.

### C.    Conclusion: Credibility

In summary, Ayhan fails to show that the ALJ erroneously assessed his credibility.

## II.    The ALJ's Duty to Develop the Record

Ayhan contends that the ALJ had a duty to call a medical expert and develop the record regarding his chronic pain, medication side effects, and anxiety. Pl.'s Opening Br. 14-15.

### A.    Standards

The ALJ's duty to develop the record is triggered when ambiguities arise. *Widmark v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ has an affirmative duty to call a medical expert when a claimant establishes disability, but his onset date is uncertain. *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998).

### B.    Analysis

#### a.    Medical Expert

Ayhan provides no authority for his assertion that the ALJ is required to call a medical expert. Pl.'s Opening Br., 14. Ayhan has not established that he is disabled and has an uncertain onset date.

Therefore, the ALJ had no obligation to call a medical expert.

### b.     Chronic Pain and Medication Side Effects

The ALJ properly rejected Ayhan's testimony regarding his alleged chronic pain and medication side effects, as discussed above. The ALJ therefore had no duty to develop the record regarding these issues.

Additionally, the Commissioner correctly notes that Ayhan's indicated citations regarding his alleged side mediation side effects point to pharmacy records showing standard instructions and warnings, rather than any evidence showing that Ayhan actually experienced such side effects. Def.'s Br., 10; (citing Pl.'s Opening Br. 15). Ayhan's indicated citations point to physician prescriptions and pharmacy records (Tr. 173-76, 257-63, 353) and the ALJ's observation at Ayhan's hearing that Ayhan "tried every medication on the market." Tr. 510. These citations do not establish that Ayhan actually experienced any medication side effects.

For both these reasons, Ayhan fails to show that the ALJ was under a duty to develop the record regarding his alleged medication side effects.

### c.     Anxiety

Ayhan did not allege disability due to anxiety (Tr. 77, 90, 101, 111, 122), and did not testify that he was impaired by anxiety at his April 9, 2008 hearing, where he was represented by counsel. Tr. 493-529. The Commissioner need only consider impairments a claimant says he has. 20 C.F.R. § 416.912(a). On February 25, 2005, Emergency Room physicians assessed anxiety in conjunction with Ayhan's GERD complaints. Tr. 485. However, they provided no explanation for this diagnosis (*id.*), and the record shows no prior or subsequent treatment or complaints relating to anxiety. This

notation does not establish an ambiguity in the record regarding Ayhan's alleged disability.

For both these reasons Ayhan's submission regarding the ALJ's duty to develop the record regarding his alleged anxiety is dismissed.

In summary Ayhan fails to show that the ALJ had a duty to further develop the record.

**III.    Lay Testimony**

Ayhan contends, without citation, that the ALJ should have provided a translator in order to hear testimony from his father, whom he does not identify by name. Pl.'s Opening Br. 10. Ayhan's initial submission does not explain this assertion.[2] *Id.* The Commissioner fails to address this argument. Ayhan's reply brief raises the argument again, but fails to cite any relevant authority regarding any duty under which an ALJ must provide an interpreter for lay testimony. Pl.'s Reply, 3.

At his April 9, 2008, hearing, Ayhan's counsel informed the ALJ that his father required a translator. Tr. 494. The ALJ stated that he had no prior notice of such need, and therefore did not call one to the hearing. *Id.*

Ayhan bears the burden of providing evidence of disability. 20 C.F.R. § 416.912(a); *Tackett*, 180 F.3d at 1098. No authority suggests a different standard applies to lay testimony. Ayhan's submission is therefore rejected.

**IV.    The ALJ's Step Five Findings**

Ayhan finally claims that the ALJ erroneously relied upon the Commissioner's medical-vocational guidelines, and that the ALJ should have solicited testimony from a vocational expert.

---

[2]Ayhan states that this argument will be explained "hereinbelow" but his submission contains no further discussion. Pl.'s Opening Br. 11.

11 - OPINION AND ORDER

Pl.'s Opening Br., 12.

After an ALJ determines that a claimant cannot perform past relevant work at step four, the ALJ must determine if the claimant can perform work in the national economy at step five. 20 C.F.R. § 416.920(a)(4)(v). Unless the claimant has non-exertional limitations in his RFC, the ALJ may make these findings by relying upon the Commissioner's medical-vocational guidelines. *Tackett*, 180 F.3d at 1101. If the claimant has non-exertional limitations, including environmental limitations, the ALJ must draw upon the testimony of a vocational expert to support his step five findings. *Id.* at 1102.

The ALJ presently found that Ayhan could perform light work, and did not find any non-exertional limitations. Ayhan now asserts that he has non-exertional environmental limitations which precluded the ALJ's reliance upon the medical-vocational guidelines. Pl.'s Opening Br. 11, 19 (citing Tr. 336). Ayhan's citation points only to his own statement on a form submitted to his attorney stating that his chest pain worsens with exposure to fumes, chemicals, heat, and cold. Tr. 336. The ALJ appropriately rejected Ayhan's symptom testimony for the reasons discussed above. The ALJ therefore properly excluded Ayhan's alleged environmental limitations from his RFC analysis. In this circumstance the ALJ had no obligation to call a medical expert and properly relied upon the grids. *Tackett*, 180 F.3d at 1102.

Finally, Ayhan claims, for the first time, that he is illiterate, and that this also required the testimony of a vocational expert. Pl.'s Opening Br., 10-11. Ayhan made no such claim in his initial application or at his hearing before the ALJ. Tr. 77, 90, 101, 111, 122, 493-529. The record instead shows that Ayhan completed numerous DDS forms by hand (Tr. 111-17, 122-24, 226-32), and

12 - OPINION AND ORDER

additionally completed over fifty pages of questionnaires for his attorney. Tr. 303-52. Ayhan's responses to his attorney's questionnaires in fact indicated that he can write "some" (Tr. 318), and has "average" reading ability. Tr. 332. As noted, Ayhan is precluded from raising original arguments before this court, and the record additionally flatly contradicts his assertion of illiteracy. The ALJ therefore had no obligation call a vocational expert to testify about the effects of his alleged illiteracy.

The ALJ's use of the medical-vocational guidelines, and his subsequent step five findings, is therefore affirmed.

## **CONCLUSION**

The Commissioner's decision that Ayhan did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this   22nd   day of January, 2010.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge